UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:13-CV-00980-TBR

BRUCE HOLLY                                                                           Plaintiff

v.

UPS SUPPLY CHAIN SOLUTIONS, INC. and                              Defendants
JEREMY FLETCHER


**MEMORANDUM OPINION AND ORDER**

This matter is before the Court upon Defendant Jeremy Fletcher's Motion for Dismiss Plaintiff's Complaint. (Docket No. 5.) Plaintiff, Bruce Holly, has responded (Docket No. 9.) Defendant Jeremy Fletcher has replied. (Docket No. 10.) This matter is now fully briefed and ripe for adjudication. For the following reasons and consistent with the below opinion, the Court will **DENY** Defendant Fletcher's Motion to Dismiss. (Docket No. 5.)

Plaintiff has filed a Motion for Leave to File an Amended Complaint. (Docket No. 8.) Defendant Jeremy Fletcher has responded. (Docket No. 11.) This matter is ripe for adjudication. Defendant Fletcher objects to Plaintiff's Motion to Amend to the extent the proposed Amended Complaint continues to pursue any individual claims against him because such amendment would be futile. (Docket No. 11.) Because the Court denies Defendant Fletcher's Motion to Dismiss, the Court will **GRANT** Plaintiff's Motion to File an Amended Complaint. (Docket No. 8.)

BACKGROUND

Plaintiff Bruce Holly filed this lawsuit after UPS Supply Chain Solutions, Inc. (UPS) terminated his employment.[1] Plaintiff alleges that on or about April 1, 2013, his vehicle experienced mechanical problems while driving to work for UPS and his boss, Ron Nolan, gave him permission to take his vehicle to a mechanical repair shop to be worked on while he worked at UPS. (Docket No. 1, ¶ 7, 8.) While going to his motor vehicle in the UPS parking lot and prior to leaving to take his motor vehicle to the repair shop, Plaintiff remembered that he had a firearm in his vehicle's glove box.[2] (Docket No. 1, ¶ 11.) Upon realizing that he had a firearm in his vehicle, Plaintiff called a subordinate employee, Kenneth Moore, and asked permission to store his firearm in a compartment within Moore's motor vehicle while his vehicle was at the repair shop. (Docket No. 1, ¶ 13.) Moore agreed and subsequently came to the parking lot and allowed Plaintiff to store his firearm in a compartment within Moore's vehicle. (Docket No. 1, ¶ 14.)

Plaintiff alleges that on or about April 1, 2013, UPS became aware that Plaintiff had driven onto UPS's property with a firearm in his vehicle and had stored said firearm in Moore's vehicle while his vehicle was being repaired. (Docket No. 1, ¶ 17.) Subsequently, on May 6, 2013, Plaintiff was questioned for approximately four hours by a UPS supervisor about the referenced events of April 1, 2013, and details pertaining to the firearm.[3] (Docket No. 1, ¶ 20, 21.) On May 10, 2013, upon arriving at work, Plaintiff was informed he was being placed on paid administrative leave and/or paid suspension. On May 20, 2013, Plaintiff was contacted on

---

[1] Plaintiff's employment duties at UPS were those of a supervisor. (Docket No. 1, ¶ 3.)
[2] Plaintiff alleges he had a valid license to carry a concealed deadly weapon pursuant to KRS § 237.110 on April 1, 2013. (Docket No. 1, ¶ 12.)
[3] Plaintiff alleges Kenneth Moore was also questioned by UPS about the events of April 1, 2013. (Docket No. 1, ¶ 23.)

the telephone by Defendant Jeremy Fletcher and another UPS employee, Siria Reza, and informed that he was being terminated. (Docket No. 1, ¶ 30.)

Plaintiff asserts the reason given by Defendant Fletcher for the termination was that Plaintiff had asked an hourly employee to do a personal favor for him and his 2011 UPS Employment Evaluations. (Docket No. 1, ¶ 31.) On June 5, 2013, Plaintiff alleges Fletcher completed and signed a Commonwealth of Kentucky Division of Unemployment Insurance "Employer's Statement" form stating that the primary reason for Plaintiff's termination was "[c]laimant asked a subordinate employee for a personal favor while on company time."[4] (Docket No. 1, ¶ 33.) Plaintiff alleges UPS has a commonplace practice of allowing hourly employees to perform personal favors for salaried UPS supervisors and that UPS and Fletcher's reasons given for terminating him are mere pretext to mask the illegal motivations for his termination. (Docket No. 1, ¶ 38, 39.) Defendants UPS and Fletcher both deny that Plaintiff having his firearm on the premises in his vehicle and/or moving it from one vehicle to another had any bearing upon the decision to take adverse action against him.

Plaintiff's Complaint asserts the following three claims: (1) alleged violations of Kentucky Revised Statute (KRS) § 527.020; (2) alleged violations of KRS § 237.106; and, (3) a common law claim under the so-called public policy exception to the at-will employment doctrine, which alleges that Plaintiff was wrongfully terminated in violation of the public policy set forth in KRS 237.106 and KRS 527.020. As to Defendant Jeremy Fletcher, Plaintiff has voluntarily dismissed Counts Two and Three of his Complaint—violations of KRS 237.106 and common law wrongful termination/discharge. (Docket No. 7.) Thus, for the purposes of the

---

[4] Plaintiff asserts that on July 31, 2013, Fletcher changed his position, labeling the reason for termination an enforcement of a zero tolerance policy of "Theft of Company Time." (Docket No. 9, at 10.)

present motion to dismiss by Defendant Jeremy Fletcher, only Count One—violations of KRS 527.020—remains.

STANDARD

The Federal Rules of Civil Procedure require that pleadings, including complaints, contain a "short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a claim or case because the complaint fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b). When considering a Rule 12(b)(6) motion to dismiss, the court must presume all of the factual allegations in the complaint are true and draw all reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Great Lakes Steel v. Deggendorf*, 716 F.2d 1101, 1105 (6th Cir. 1983)). "The court need not, however, accept unwarranted factual inferences." *Id.* (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

Even though a "complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Instead, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted). A complaint should contain enough facts "to state a claim to relief that is plausible on its face." *Id.* at 570. A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)

(citing *Twombly*, 550 U.S. at 556). If, from the well-pleaded facts, the court cannot "infer more

than the mere possibility of misconduct, the complaint has alleged - but has not 'show[n]' - 'that

the pleader is entitled to relief.'" *Id.* at 1950 (citing Fed. R. Civ. P. 8(a)(2)). "Only a complaint

that states a plausible claim for relief survives a motion to dismiss." *Id.*

DISCUSSION

Count One as to Defendant Jeremy Fletcher - Kentucky Revised Statute § 527.020

The Court reiterates that for a Plaintiff to overcome a motion to dismiss a claim the claim

must merely be "plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court

does not believe at this early point in the case the claim is implausible and therefore will deny

Defendant Fletcher's motion to dismiss.

Kentucky Revised Statute § 527.020, in relevant part, states:

527.020 Carrying concealed deadly weapon
* * *
(4) . . . No person or organization, public or private, shall prohibit a person
licensed to carry a concealed deadly weapon from possessing a firearm,
ammunition, or both, or other deadly weapon in his or her vehicle in
compliance with the provisions of KRS 237.010 and 237.115. Any attempt
by a person or organization, public or private, to violate the provisions of
this subsection may be the subject of an action for appropriate relief or for
damages in a Circuit Court or District Court of competent jurisdiction.
* * *
(8) A loaded or unloaded firearm or other deadly weapon shall not be
deemed concealed on or about the person if it is located in any enclosed
container, compartment, or storage space installed as original equipment in
a motor vehicle by its manufacturer, including but not limited to a glove
compartment, center console, or seat pocket, regardless of whether said
enclosed container, storage space, or compartment is locked, unlocked, or
does not have a locking mechanism. No person or organization, public or
private, shall prohibit a person from keeping a loaded or unloaded firearm

or ammunition, or both, or other deadly weapon in a vehicle in accordance with the provisions of this subsection. Any attempt by a person or organization, public or private, to violate the provisions of this subsection may be the subject of an action for appropriate relief or for damages in a Circuit Court or District Court of competent jurisdiction.

Defendant Jeremy Fletcher contends Plaintiff's Complaint fails to provide a right of recovery against him under KRS 527.020 because KRS 527.020 deals with "concealed" weapons possessed in an individual's "vehicle" and that the facts alleged in the Complaint clearly surpass mere possession or concealment of a firearm in a concealed carry license owner's vehicle. Specifically, Defendant points out "Plaintiff admits to removing his gun from his vehicle, handling it, requesting a subordinate to store the firearm in the subordinate's vehicle, and actually storing the gun in a compartment of that employee's vehicle." (Docket No. 5, at 7.)

Defendant Fletcher is correct that *some* of Plaintiff's behavior—namely the requesting of a personal favor to the extent it involved moving of the firearm between vehicles—is not covered by 527.020. However, clearly Plaintiff's behavior of keeping the firearm in his vehicle or in the vehicle of another is protected by 527.020(4) and 527.020(8) respectively. While Defendant contends that the reason for the termination was that Plaintiff asked a subordinate employee for a personal favor while on company time,[5] Plaintiff argues this is merely pretext for the illegal motive for his termination—which includes violations of KRS 527.020. (Docket No. 1, ¶ 39.) In support of this allegation, Plaintiff makes the following statements in his Complaint:

---

[5] Plaintiff alleges, and there appears to be at least some evidence supporting this allegation, that subsequently on July 31, 2013, UPS and Fletcher "changed their story" and alleged that the termination was a result of a violation of UPS's zero tolerance "Theft of Time" policy. (See Docket No. 1, ¶ 32-34.) Plaintiff alleges this policy doesn't exist and is mere pretext to mask the illegal motive for his termination. (Docket No. 1, ¶ 39.) The Court notes that the allegation that UPS has changed its justification for the termination is circumstantial evidence that the reasons given are pretext.

38.  Upon information and belief, UPS has a commonplace practice of allowing hourly employees to perform personal favors for salaried UPS supervisors.

40.  Upon information and belief, Fletcher and/or UPS, between the dates of May 6, 2013, and May 20, 2013, examined and/or considered the legalities of terminating Holly for having a firearm in his vehicle on UPS's property.

(Docket No. 1.)  Certainly, the allegation—which is assumed to be true for purposes of this motion—that UPS has a commonplace practice of allowing hourly employees to perform personal favors for salaried UPS supervisors along with the notion that Plaintiff was fired for having a subordinate employee perform him a personal favor could support Plaintiff's allegation that the personal favor reason given is pretext and that his termination was actually a violation of KRS 527.020.

Additionally, Plaintiff alleges that after being placed on paid administrative leave and/or paid suspension, UPS security personnel placed a photograph of him at the UPS security guard stations, which was not normally done for employees who were suspended and/or placed on administrative leave.  (Docket No. 1, ¶ 26.)  While weak circumstantial evidence at this stage of the proceedings, this supports the assertion that UPS's true concerns were that Plaintiff possessed a firearm in his vehicle—protected behavior under 527.020—as opposed to the fact he had another employee perform a personal favor.  Accordingly, Plaintiff has stated a plausible claim that he was terminated in violation of KRS § 527.020.[6]

The Court notes that KRS § 527.020 requires a "person or organization" do the prohibiting of the protected activity of storing a firearm in a vehicle.  Thus, the fact Plaintiff has

---

[6] The Court reiterates that "plausibility" is distinct from likelihood of success.  Plaintiff will face large hurdles in disproving UPS/Fletcher's proclaimed—and apparently legally permissible—reasoning for terminating him.  However, given that the termination occurred close in time to the discovery that he possessed a firearm in his vehicle, his allegation that UPS has a commonplace practice of permitting employees to perform personal favors, and the allegation that security officers placed his photograph in guard stations which was apparently unusual, the Court finds Plaintiff's claim is plausible.

plausibly claimed that he was terminated in violation of 527.020 isn't alone sufficient to overcome a motion to dismiss *as to Defendant Jeremy Fletcher*. However, Plaintiff has alleged that Defendant Fletcher took the adverse actions of suspending and terminating Plaintiff in response to his bringing a firearm on the premises and keeping in in a vehicle. (*See* Docket No. 1, ¶ 30, 31, 33, 35, 39, 40.) Accordingly, Plaintiff has stated a plausible claim under KRS 527.020 as to Defendant Fletcher and the Court will **DENY** Defendant Jeremy Fletcher's motion to dismiss.[7]

## CONCLUSION

For these reasons, and consistent with the Court's conclusions above,

IT IS HEREBY ORDERED that Defendant Jeremy Fletcher's Motion to Dismiss is **DENIED**. (Docket No. 5.) Because the Court denies Defendant Fletcher's Motion to Dismiss, the Court will **GRANT** Plaintiff's Motion to File an Amended Complaint. (Docket No. 8.)

IT IS SO ORDERED.

Date:

cc:     Counsel

---

[7] Defendant's citation to *Korb v. Voith Indus. Servs., Inc.*, 3:12-CV-00222-H, 2012 WL 7062365 (W.D. Ky. Nov. 28, 2012), is not determinative because that case involved a motion for summary judgment, as opposed to a motion to dismiss.