UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**BRUCE HOLLY,**

        **Plaintiff,**

**v.**                                **CASE NO. 3:13-CV-980-DJH-CHL**

**UPS SUPPLY CHAIN SOLUTIONS, INC.,**
**et al.,**

        **Defendants.**

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS'**
**MOTION TO SEAL SETTLEMENT CONFERENCE REPORT AND ORDER**

      This matter is before the Court on a motion to seal ("Motion to Seal") (DN 40) filed by

Defendants UPS Supply Chain Solutions, Inc. ("UPS SCS") and Jeremy Fletcher (collectively

"Defendants").  Defendants request that the Court seal the settlement conference report and order

("Settlement Conference Report and Order") (DN 38) entered on March 27, 2015.  Plaintiff

Bruce Holly ("Plaintiff") has filed a response ("Response") (DN 47) and Defendants have filed a

reply ("Reply").[1]  (DN 50.)  This matter is now ripe for review.

      As is discussed in detail below, there is no compelling reason to seal the Settlement

Conference Report and Order.  Defendants' argument in favor of sealing the Order is based on a

false premise: that the Order contains Defendants' valuation of the case.  In reality, the Order

documents Defendants' sanctionable conduct, which was primarily related to the cap on the

settlement authority of Defendants' client representative.  The Order does not contain any

---

[1]      Both Plaintiff's Response and Defendants' Reply address several filings by Defendants, including the
Motion to Seal.  (*See* DN 47, 50.)  The instant Memorandum Opinion and Order references the Response and Reply
only as they relate to the Motion to Seal.

confidential settlement communications, and its contents are not privileged.   Accordingly, the Motion to Seal is DENIED.

**Background**

**1.  The Settlement Conference and Subsequent Report and Order**

The Court conducted a settlement conference ("Settlement Conference") in this matter on March 23, 2015.  The parties did not reach an agreement.  On March 27, 2015, the Court issued the Settlement Conference Report and Order.  The Court found that Defendants and their counsel violated, in two ways, an Order of the Court (DN 36) that set requirements for the parties' participation in the Settlement Conference: (1) Defendants sent for participation in the Settlement Conference a client representative, Human Resources Manager Siria Reza ("Reza"), who lacked full settlement authority; and (2) Defendants permitted at least one other individual affiliated with UPS SCS to participate telephonically in the Settlement Conference.   (*See generally* DN 38 (discussing violations of DN 36, Order for Settlement Conference).)  The Court further found that Defendants and their counsel were "substantially unprepared to participate[2] – or d[id] not participate in good faith – in the conference," and that they "fail[ed] to obey a scheduling or other pretrial order," in violation of Rule 16(f)(1)(B) and (C) of the Federal Rules of Civil Procedure.  (*Id.* at 7-8.)

---

[2]      Defendants have suggested in other filings that the Court may have considered counsel "substantially unprepared to participate" in the settlement conference due to certain events that occurred in counsel's personal life.  (*See, e.g.*, DN 44-2 at ¶¶ 12-13, 2 (filed under seal pursuant to DN 43; unsealed pursuant to DN 57, Memorandum Opinion and Order denying Defendants' Motion to Seal Objections).)  First, the Court notes that these events were not brought to the Court's attention until Defendants filed their Objections.  Second, the finding of unpreparedness was based upon the failure of Defendants and their counsel to have an authorized representative at the Settlement Conference, not upon any failure by counsel to spend sufficient time or effort in advance of the Settlement Conference.  Accordingly, while the Court is sympathetic to the events described by counsel, those events are not relevant to the analysis, either in the instant Memorandum Opinion and Order or in the Settlement Conference Report and Order.

The Court ordered Plaintiff to file documentation of his attorney's fees, costs, and expenses incurred in relation to his preparation for and participation in the Settlement Conference, as well as any income lost by Plaintiff as a result of having attended the Settlement Conference.  (DN 38 at 9.)  The Court ordered Defendants to pay Plaintiff the amount requested within ten days of filing by Plaintiff of such documentation, or to file with the Court objections to Plaintiff's reported fees, costs, and expenses.  (*Id.*) The Court ordered that any such objections were "to be limited to the reasonableness of the amounts claimed."[3]  (*Id.*)

## 2.    Defendants' Motion to Seal Settlement Conference Report and Order

On March 30, 2015, Defendants filed the Motion to Seal and a memorandum of law in support thereof.  (DN 40, 40-1.)  Defendants request that the Court seal the Settlement Conference Report and Order, or, in the alternative, redact portions thereof that refer to a specific monetary amount.  (DN 40-1 at 1.)  Defendants argue that the Settlement Conference Report and Order contains confidential information regarding settlement negotiations and that such information should not be in the public record.  (*Id.*)  Defendants represent that they attended the Settlement Conference "in good faith and with the hope that the parties could reach a resolution." (*Id.*)

Defendants contend that the Sixth Circuit has recognized a "formal settlement privilege." (DN 40-1 at 2 (citing *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976

---

[3]        The parties submitted a number of motions and other filings following the entry of the Settlement Conference Report and Order.  (DN 38.)  On March 30, 2015, Defendants filed the Motion to Seal.  (DN 40.)  On April 3, 2015, Plaintiff filed his Bill of Costs (DN 42) as directed in the Settlement Conference Report and Order.  Thereafter, on April 9, 2015, Defendants filed the following: (1) a motion to seal their objections (DN 43) to the Settlement Conference Report and Order; (2) their objections (DN 44) to the Settlement Conference Report and Order; and (3) a motion styled, "Motion to Stay March 27, 2015 Settlement Conference Report and Order" ("Motion to Stay").  (DN 45.)  The Court denied the Motion to Stay on May 20, 2015.  (DN 52.)  On April 17, 2015, Plaintiff filed his Response, (DN 47), and on May 1, 2015, Defendants filed their Reply.  (DN 50.)  Notably, Defendants did not file any objection to the reasonableness of the amounts claimed by Plaintiff in his Bill of Costs.

(6th Cir. 2003).)   Defendants characterize the Settlement Conference Report and Order as containing references to "the dollar amount at which Defendants had valued the case and were willing to negotiate towards to settle" the case.   (*Id.* at 1; *see also id.* at 2 (referring to "the amount of money [Defendants] are willing to pay").)   Defendants contend that if parties to litigation cannot rely on the Court to maintain confidentiality in the context of settlement discussions, they "will be reluctant to have any discussions regarding settlement possibilities with the Court."   (*Id.* at 2.)   They state that this concern is particularly true for "defendants who face the potential for repeated claims by employees."   (*Id.*)

Defendants go on to state that the Court "discussed this important premise . . . at the outset" of the Settlement Conference, "specifically mentioning that [the undersigned] would not share information revealed by one side to the other unless given specific permission to do so." (DN 40-1 at 3.)   Defendants contend that the Court included in the Settlement Conference Report and Order "the amount at which the case had been valued," despite counsel having stated during the Settlement Conference that she did not have authority to make an offer in that amount.   (*Id.*; DN 38.)   According to Defendants, inclusion by the Court of such amount constituted "shar[ing] UPS SCS's value of this case not only with the Plaintiff and his counsel, but also the public at large."   (DN 40-1 at 3.)   Defendants allege that by virtue of the contents of the Settlement Conference Report and Order, the Court failed to maintain confidentiality of settlement communications and "jeopardized any remaining potential that the parties could resolve this matter."   (*Id.*)   Defendants state that they never had a desire to terminate settlement negotiations until the Court halted the Settlement Conference, and they state that they contacted Plaintiff's

4

counsel on March 25, 2015 to ask whether Plaintiff would be interested in continued negotiations.  (*Id*. at 4 n.2.)

Defendants contend that they are prejudiced by the Settlement Conference Report and Order, in particular the specific monetary amount, remaining in the public record, and request that the Order be sealed to avoid further prejudice.  (DN 40-1 at 3.)  In the alternative, Defendants request that any and all references to specific monetary amounts be redacted from the Settlement Conference Report and Order.  (*Id.*)  Defendants note that they "declined to include [the monetary amount] even in [their] confidential mediation statement."  (*Id.*)  Defendants state that the Court need not "reveal[] the specific amount at which UPS SCS valued the case and was willing to offer during confidential settlement proceedings" in order to deter Defendants from "what [the Court] considers sanctionable conduct."  (DN 40-1 at 4.)  Defendants close by stating that failure to grant the Motion to Seal "will chill settlement discussions in all cases."  (*Id.*)

### 3.  Plaintiff's Response (DN 47)

On April 17, 2015, Plaintiff filed his Response.  (DN 47.)  As noted above, the Response addresses the numerous motions and objections filed by Plaintiffs subsequent to the entry of the Settlement Conference Report and Order.  The Court will summarize Plaintiff's arguments in the Response only as they relate to the Motion to Seal.

Plaintiff's position in response to the Motion to Seal is that the Settlement Conference Report and Order should not be sealed, but "the monetary amount specified on page 4 [of the Order] should be redacted[.]"  (DN 47 at 6.)  Contrary to Defendants' argument that the contents of the Settlement Conference Report and Order eliminated the possibility of continued settlement discussions, Plaintiff states that his having knowledge of the monetary amount "has not hindered

the settlement process[.]" (*Id.*)  Rather, Plaintiff maintains, "the ridiculously low offers made [by] the Defendants and lack of any real movement in their offers [during the Settlement Conference] had already sent the message to the Plaintiff" that the case would only be resolved upon a ruling by the Court on Defendants' pending motion for summary judgment and/or by jury verdict.  (*Id.*)  Plaintiff states that when Defendants' counsel contacted his counsel on March 25, 2015 regarding whether settlement negotiations could continue, Plaintiff's counsel responded that Defendants' "lack of movement and final offer" at the Settlement Conference had led Plaintiff to the conclusion that settlement was not possible at such time."  (*Id.*)

### 4. Defendants' Reply (DN 50)

On May 1, 2015, Defendants filed their Reply.  (DN 50.)  Defendants state that Plaintiff does not dispute the existence of a "formal settlement privilege" as recognized by the Sixth Circuit.  (DN 50 at 1 (citation omitted).)  Defendants contend that Plaintiff's "suggestion that the Court just redact [the Court's] reference to the dollar amount at which [UPS SCS] valued his case is insufficient to address the issue raised by UPS [SCS]."  (*Id.*)  Defendants maintain that the settlement privilege recognized by the Sixth Circuit encompasses all settlement communications, not just monetary amounts, and state that if the privilege were so limited, parties would hesitate to communicate candidly with the Court about any aspect of their case that had not already been communicated to opposing parties.  (*Id.* at 1-2.)  Defendants close by stating that the Settlement Conference Report and Order contains confidential in-chambers communications with counsel, and that Plaintiff fails to make any argument as to why such confidential information should remain in the public record.

6

<u>Discussion</u>

**1.   Strong Presumption in Favor of Public Access to Judicial Documents**

"Only the most compelling reasons can justify non-disclosure of judicial records."[4]  *In re The Knoxville News Sentinel Co., Inc.*, 723 F.2d 470, 476 (6th Cir. 1983) (citation omitted). "There can be no doubt that the public has both a constitutional and a common law presumptive right of access to civil proceedings and judicial records."  *In re Southeastern Milk Antitrust Litig.*, 666 F. Supp. 2d 908, 915 (E.D. Tenn. 2009) (*class certification granted in part and denied in part*, *In re Southeastern Milk Antitrust Litig.*, 2010 U.S. Dist. LEXIS 94223 (E.D. Tenn. 2010)) (citing *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1179 (6th Cir. 1983) (*rev'd on other grounds*, *FTC v. Brown & Williamson Tobacco Corp.*, 778 F.2d 35 (D.C. Cir. 1984)).  However, the "right to inspect and copy judicial records is not absolute," and trial courts have a well-established "supervisory power over [their] own records and files . . . ."  *Nixon v. Warner Commun's*, 435 U.S. 589, 598 (1978) (citations omitted).

A party seeking to seal court records must show "compelling reasons" in support thereof. *In re Southeastern Milk*, 666 F. Supp. 2d at 915 (quoting *Meyer Goldberg Inc. v. Fisher Foods, Inc.*, 823 F.2d 159, 163 (6th Cir. 1987)).  The party's reasoning should be based on at least one of two recognized exceptions to the "strong presumption in favor of public access: [1] those based on the need to keep order and dignity in the courtroom and [2] those which center on the content of the information to be disclosed to the public."  *Id.* (quoting *Brown & Williamson*, 710

---

[4]        The Court notes that there is no need to analyze the procedural requirements for seeking leave to file documents under seal.  A Joint General Order of the Eastern and Western Districts of Kentucky provides the procedures for seeking leave to file a document under seal in civil and criminal proceedings, for filing *ex parte* documents, and for filing a motion to seal an entire case.  *See* Joint General Order 11-01, §§ 8.1(a), 8.2, 8.3.  In this case, Defendants move to seal a previously-issued Order of the Court, rather than a document that falls within any of the categories identified in the Joint General Order.

F.2d at 1179).   The Sixth Circuit has recognized several interests that might justify placing records under seal.   Such interests include a criminal defendant's right to a fair trial, "certain privacy rights of participants or third parties, trade secrets and national security."   *Brown & Williamson*, 710 F.2d at 1179 (citing *Nixon*, 435 U.S. at 598) (additional citations omitted).

> ### 2.   No Compelling Reasons to Seal the Settlement Conference Report and Order

The Motion to Seal implicates the second exception to the presumption in favor of public access, circumstances that "center on the content of the information to be disclosed to the public."  *See In re Southeastern Milk*, 666 F. Supp. 2d at 915.  Defendants contend that the Court revealed confidential information from the March 23, 2015 Settlement Conference, and that by doing so, the Court "jeopardized" the possibility of settlement in this case.  (DN 40-1 at 3.)  They also claim that the Settlement Conference Report and Order should be sealed because it provides information that could be utilized by litigants in other cases who are engaged in settlement discussions with UPS SCS.  (*Id.* at 2.)  Defendants further argue that, should the Settlement Conference Report and Order remain unsealed, it will chill settlement discussions even in cases not involving the parties to this case.  (*Id.* at 4 ("Failure to grant Defendants' Motion and seal the Order revealing confidential settlement information will chill settlement discussion in *all cases*.") (emphasis added).)

The Court finds that, under the circumstances of this case, there are no "compelling reasons" that would support sealing the Settlement Conference Report and Order.  There are no privacy rights, trade secrets, or matters of national security at issue here.  Rather, Defendants have merely set forth, without elaboration or support, their fears as to the potential consequences of the Settlement Conference Report and Order remaining in the public record.  "[N]aked conclusory statement[s]" as to potential harm to a party, such as those offered by Defendants,

8

"fall[] woefully short of the kind of showing which raises even an arguable issue as to whether it may be kept under seal." *Brown & Williamson*, 710 F.2d at 1180 (quoting *Joy v. North*, 692 F.2d 880, 894 (2d Cir. 1982)). "Importantly, neither harm to reputation of the [moving] party nor conclusory allegations of injury are sufficient to overcome the presumption of public access." *In re Southeastern Milk*, 666 F. Supp. 2d at 915 (citing *Brown & Williamson*, 710 F.2d at 1179-80); *see, e.g., Joy*, 692 F.2d at 894 (stating that "disclosure of poor management in the past" is "hardly a trade secret").

  a.   The Purpose of the Settlement Conference Report and Order is to Document the Circumstances that Support Sanctions

The Court has a practice of issuing a report on each settlement conference that it conducts. The purpose of such reports is to preserve for the record pertinent information regarding the settlement conference, including, without limitation, whether the parties reached an agreement, whether any follow-up proceedings are needed, and, most critically for purposes of the instant Memorandum Opinion and Order, whether settlement negotiations were conducted in good faith. The purpose of the Settlement Conference Report and Order in this case is no different. It contains information that the Court deemed important *for preservation in the record*. Specifically, the Settlement Conference Report and Order includes the Court's finding that Defendants violated an Order of the Court, the reasoning that led to that finding, the resulting sanctions, and the Court's authority to order and conduct settlement conferences and to issue sanctions related thereto.

  b.   Defendants Mischaracterize Their Conduct at the Settlement Conference

Defendants' Motion to Seal rests on a blatant mischaracterization of the Settlement Conference and their own conduct. Defendants maintain that the Settlement Conference Report

9

and Order "reveal[s] confidential communications between [the Court] and counsel for Defendants *regarding the dollar amount at which Defendants had valued the case* and were willing to negotiate towards to settle [the] lawsuit."[5]  (DN 40-1 at 1 (emphasis added).)  This is simply untrue.  In reality, Defendants have never, either during the March 23, 2015 Settlement Conference or at any time subsequent thereto, revealed to the Court an amount at which they value Plaintiff's case.  Having never received that information, the Court has not revealed it, and could not have done so.  Rather, Defendants communicated to the Court the *amount at which Reza's settlement authority was capped*.  The Settlement Conference Report and Order, therefore, discusses the fact that Reza's settlement authority was capped, in contravention of the Order for Settlement Conference, as well as the amount of that cap.

A cap on settlement authority and the amount at which a party values a case are two distinctly different concepts.  The Settlement Conference Report and Order delineates the difference between a cap and a valuation.  It clearly conveys the fact that Defendants' conduct was sanctionable because they violated the Order for Settlement Conference by bringing with them to the Settlement Conference a representative, Reza, whose authority to settle the case was *capped at an amount certain*.  The Settlement Conference Report and Order contains extensive excerpts from the Order for Settlement Conference, with specific references to the critical importance of a client representative having full settlement authority.  (*See, e.g.*, DN 38 at 2 ("[E]ach party must attend through a person who is fully authorized to approve a settlement and

---

[5]        Throughout their Motion to Seal and Reply, Defendants continually reference the value they placed on this case.  (*See, e.g.*, DN 40-1 at 2 (referencing "discussions about the amount of money [parties] are willing to pay for a particular claim"); *id.* at 2 (referencing "the amount at which the case had been valued"); id. (alleging that the Settlement Conference Report and Order "shares UPS SCS'[s] value of this case"); *id.* at 4 (stating that deterring sanctionable conduct "does not require revealing the specific amount at which UPS SCS had valued the case and was willing to offer during confidential settlement proceedings"); DN 50 at 1 (referencing "the dollar amount at which . . . UPS SCS valued [the] case").)

has the power to change a party's settlement posture during the course of the conference.")
(quoting DN 36 at 2); *id.* at 3 ("Having an inadequately authorized principal defeats one of the
essential purposes of the settlement conference.") (quoting DN 36 at 3, ¶ 1).)   The Settlement
Conference Report and Order further notes that while the Order for Settlement Conference
establishes a procedure for requesting a variance from the requirement that party representatives
have full settlement authority, Defendants did not request such a variance.  (*See* DN 38 at 3-4.)

   The Settlement Conference Report and Order goes on to describe the events surrounding
the revelation that Reza's settlement authority was capped: "Specifically, after questioning
Defendants' counsel in chambers for several minutes, the Court learned that Reza's authority to
settle the case was *capped at a specific monetary amount*, \$25,000," with some purported
"wiggle room," which Defendants' counsel were "unable to define . . . sufficiently to allow the
Court to grasp the actual extent of Reza's authority."  (DN 38 at 4 (emphasis in original).)   The
Settlement Conference Report and Order further states that, "[u]pon confirming that Reza did not
have the requisite authority to meaningfully participate in the settlement conference," the Court
called an end to the negotiations and ordered the parties and counsel to convene as a group.  (*Id.*)
As described in the Order, the Court informed Plaintiff and his counsel of the "cap on [Reza's]
authority (plus the purported 'wiggle room')."  (*Id.* at 5.)   The Court then gave Reza and
Defendants' counsel an opportunity respond.   "Both Reza and Defendants' counsel *confirmed
the accuracy* of the Court's description of the limits of Reza's authority."   (*Id.* (emphasis
added).)  Plaintiff notes as much in his Response:

> Magistrate Judge Lindsay then afforded Reza and the Defense the
> opportunity to disagree with his conclusions.  Neither Reza nor the
> Defense counsel offered any disagreement with Magistrate Judge
> Lindsay's conclusions/findings.

11

(DN 47 at 3.)

Again, at no time during the Settlement Conference did Defendants or their counsel dispute the Court's characterization of the *cap* on Reza's settlement authority. *Contrast Madison v. Nationwide Mut. Ins. Co.*, 2013 U.S. Dist. LEXIS 108685, *17-18 (W.D. Ky. 2013) (finding that while there may have been a cap on defendant client representative's settlement authority, defendant had reached an "actual valuation" of the case and made offer that exceeded its valuation). Only in filings subsequent to being sanctioned did Defendants decide to rewrite history, portraying what was unmistakably a limit on Reza's authority as their valuation of the case. For example, in an affidavit submitted (DN 44-1) as an exhibit to Defendants' objections (DN 44) to the Settlement Conference Report and Order, defense counsel LaQuita Wornor[6] ("Wornor") provides additional information regarding Defendants' purported valuation of the case.[7] Wornor avers that during the Settlement Conference, she offered "explanations" to the Court to the effect that Reza was authorized to settle the case for an "amount [that had been] determined to be a reasonable valuation of the case," plus some "wiggle room." (DN 44-1 at 4.) Wornor further states that she "decided not to continue to offer explanations" to the Court because, "given the tone of the mediation and the in-chambers conference, [she] believed [she] would further inflame the situation if [she] continued in [her] effort to convince [the Court] that [Defendants] had not violated the Settlement Order." (DN 44-1 at ¶ 19.)

---

[6]    The Court notes that Wornor is no longer counsel of record in this matter, having left the law firm that represents Defendants. (See DN 55.)

[7]    In a Memorandum Opinion and Order issued concurrently with the instant Memorandum Opinion and Order, the Court denied Defendants' motion to seal their objections and associated exhibits. (DN 43 (Motion to Seal Objections to Settlement Conference Report and Order); DN 57 (Memorandum Opinion and Order denying DN 43).)

The Court rejects Defendants' retelling of the events of March 23, 2015.  At no time during the Settlement Conference did the Court receive any explanation regarding Reza's authority, from counsel or from Reza herself, that would support any conclusion other than that Reza's settlement authority was capped at an amount certain.  Additionally, the Court looks with skepticism on Wornor's statement that she chose not to speak up due to fear that she would "inflame the situation."  If Wornor truly believed that the Court was conflating a cap with a valuation of this case, it was incumbent upon Wornor to make her position known to the Court.  She did not do so.  Based on the circumstances, the Court can only conclude that Defendants' current argument that the Settlement Conference Report and Order contains their "valuation of the case" is merely a self-serving, post-hoc rationalization of their conduct.

The Court ordered Defendants to come to the Settlement Conference with a client representative who had full authority to settle the case.  They did not.  When confronted, they admitted it.  After being sanctioned, Defendants and their counsel have repeatedly made representations to the court that are starkly at odds with what actually happened.  The Court cannot countenance this attempt to rewrite history. On March 23, 2015, it was perfectly clear to the Court, to Plaintiff, to Plaintiff's counsel, to Defendants' counsel,[8] and to Reza herself that the sole, grave problem with Defendants' conduct was attending the Settlement Conference the cap on Reza's settlement authority, and *not* any purported valuation of the case.

---

[8]     Defendants allege that the Court, through the Settlement Conference Report and Order, "shares UPS SCS's value of this case not only with Plaintiff and his counsel, but also the public at large."  (DN 40-1 at 3.)  Defendants state that, during "private communication with UPS SCS counsel, [the undersigned] indicated that he would share the amount, *which he presumed to be [UPS SCS's] next counter*, and UPS SCS counsel . . . expressly stated that she did not have authority to do so without obtaining permission from Ms. Reza, who was in a separate room."  (*Id.* (emphasis added).)  Defendants accurately state that when the Court heard the $25,000 figure, the Court initially understood it to be a settlement offer by Defendants.  The Court deemed it encouraging that Defendants appeared to be willing to engage in continued negotiations.  Defendants' counsel, however, quickly clarified that the $25,000 amount was *not* an offer, *but rather, it was the amount at which Reza's settlement authority was capped.*

c.  Defendants' "Chilling Effect" Argument Is Misplaced

Defendants contend that, should the Settlement Conference Report and Order remain in the public record, it "will chill settlement discussions in all cases." (DN 40-1 at 4.)  They further state, "Without assurances that discussions about the amount of money they are willing to pay for a particular claim will remain confidential, defendants will be reluctant to have any discussions regarding settlement possibilities with the Court." (*Id.* at 2.)  Defendants offer no legal or factual support for this assertion.

This argument rests upon the same mischaracterization of events consistently advanced by Defendants.  Were a court to include in an order truly confidential settlement communications, it might indeed be damaging to settlement prospects in that case and even to parties' willingness to share confidential information in other cases.  However, as is explained in detail above, that simply is not what happened in this case. The Settlement Conference Report and Order contains information regarding the cap on Defendants' client representative's settlement authority; it *does not* contain information regarding a valuation of the case by Defendants or any other settlement communications that ought to remain confidential.

The Court, moreover, emphatically rejects the notion that a public record of Defendants' conduct and the resulting sanctions will have any insalubrious effect on future settlement conferences.  In the Court's view, the effect on the bar as a whole should be quite to the contrary. If parties and counsel in other cases want to avoid the situation in which Defendants find themselves, all they need do is comply with the Court's Orders.  Had Defendants done so here, the Court would not have been compelled to include in its Settlement Conference Report and Order *any* of the information that Defendants now seek to shield from public view.

14

d. <u>Any Harm to Settlement Prospects in this Case is of Defendants' Own Making</u>

Defendants contend that the Settlement Conference Report and Order "has jeopardized any remaining potential that the parties could resolve this matter." (DN 40-1 at 3.) They represent that on the date of the Settlement Conference, they "never signaled a desire to slow or terminate settlement negotiations before [the Court] halted the mediation." (*Id.* at 4 n.2.) Defendants state that their counsel reached out to Plaintiff's counsel two days after the Settlement Conference "to see if his client would be interested in continuing the negotiations." (*Id.*) They argue that in order to "prevent further prejudice" to Defendants, the Settlement Conference Report and Order, or at least the reference to a specific monetary amount, should be sealed.

Plaintiff's Response obviates this argument by Defendants. While Plaintiff does take the position that the monetary amount mentioned in the Settlement Conference Report and Order should be redacted, he argues that there is no need to seal the entire Order, in part because the Order had no influence on the progress of settlement discussions in this case. Specifically, Plaintiff states, "The fact that the amount has now been made known to the Plaintiff has not hindered the settlement process, as the ridiculously low offers made [by] the Defendants and lack of any real movement in their offers had already sent a message to the Plaintiff that the only way he would possibly receive justice would be after the court ruled on [Defendants'] motion for summary judgment and/or through a verdict of a reasonable jury." (DN 47 at 6.) Plaintiff acknowledges that Defendants' counsel contacted his attorney on March 25, 2015 regarding the potential for resuming settlement discussions. However, he states that his counsel responded as follows: "[B]ased upon the lack of movement and final offer presented, it was already

15

determined that settlement was not obtainable at this time and it may be better broached after the motion for summary judgment ha[s] been decided." (*Id.*)

Defendants ask the Court to believe that the Settlement Conference Report and Order had a negative influence on settlement negotiations.  This argument is belied by Plaintiff's account of what led to his conclusion that the parties could not reach a settlement agreement.  Only Plaintiff can say why he is not currently interested in resuming settlement discussions.  Additionally, the Court finds disingenuous Defendants' statement that they never indicated to the Court a desire to halt settlement discussions.  As is clear from the Settlement Conference Report and Order, Defendants indicated to the Court, *by their failure to bring to the Settlement Conference a client representative who had full settlement authority*, their lack of intention to work toward a resolution that would be acceptable to all parties.  Nothing in the Settlement Conference Report and Order or any other order of this Court prevents Defendants from attempting to reignite settlement discussions or, should Plaintiff agree, to engage in a further settlement conference with this Court or in a private mediation.   In short, the Court finds that the Settlement Conference Report and Order has not prejudiced Defendants' ability to reach a settlement agreement in this case.

Based on the foregoing, the Court finds that no compelling reason exists to support sealing the Settlement Conference Report and Order.

### 3.  No Settlement Communications Privilege Applies in this Case

Defendants contend that the Sixth Circuit has recognized a "formal settlement privilege," that such privilege applies in this case, and that it mandates that the Settlement Conference Report and Order be sealed.  (DN 40-1 at 2.)  Defendants cite *Goodyear Tire & Rubber Co. v.*

16

*Chiles Power Supply, Inc.*, 332 F.3d 976 (6th Cir. 2003) for the proposition that the Sixth Circuit has recognized the existence of a formal settlement privilege.  (DN 40-1 at 2.)  The Sixth Circuit framed the issue in *Goodyear* as follows: "whether communications made in furtherance of settlement negotiations are *discoverable* by litigants in another action[.]."  *Goodyear*, 332 F.3d at 979 (emphasis in original).  The case involved an issue of first impression in the circuit: whether the trial court properly denied plaintiff-appellant's motion to vacate or modify an existing confidentiality order and permit discovery of any statements made by defendant-appellee Goodyear during settlement negotiations in an action pending in another district.  *Id*.

The Sixth Circuit looked to Rule 408 of the Federal Rules of Evidence, which provides as follows:

> **Rule 408.  Compromise Offers and Negotiations**
>
> **(a) Prohibited Uses.**  Evidence of the following is not admissible – on behalf of any party – either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
>
> > **(1)** furnishing, promising, or offering – or accepting, promising to accept, or offering to accept – a valuable consideration in compromising or attempting to compromise the claim; and
> >
> > **(2)** conduct or a statement made during compromise negotiations about the claim – except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.
>
> **(b) Exceptions.**  The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Fed. R. Evid. 408.

The Sixth Circuit noted the "strong public interest in favor of secrecy of matters discussed by parties during settlement negotiations . . . whether [] under the auspices of the court or informally between the parties." *Id.* at 980. The Court concluded, "[t]he public policy favoring secret negotiations, combined with the inherent questionability of the truthfulness of any statements made therein, leads us to conclude that a settlement privilege should exist, and that the district court did not abuse its discretion in refusing to allow discovery." *Id.* The Court reasoned that it was not aware of any cases in which the Rule 408 exceptions "have been used to allow settlement *communications* into evidence for any purpose," as advocated by the plaintiff-appellant, but rather, "the exceptions have been used only to admit the occurrence of settlement talks or the settlement agreement itself for 'another purpose.'" *Id.* at 981 (citations omitted) (emphasis in original). The court concluded that "any communications made in furtherance of settlement are privileged," and that because any communications from the other action were "likely not relevant" to plaintiff-appellant's case, he "ha[d] not demonstrated a legitimate, admissible use." *Id.* at 983.

The settlement communications privilege recognized by the Sixth Circuit in *Goodyear* does not apply under the circumstances of this case. The Sixth Circuit's ruling in *Goodyear* is actually "quite limited." *Westlake Vinyls, Inc. v. Goodrich Corp.*, 2007 U.S. Dist. LEXIS 47857, *10 (W.D. Ky. 2007). As Judge Russell recognized in *Westlake Vinyls*, lower court opinions issued subsequent to *Goodyear* "frequently use a misnomer when referring to [the] *Goodyear* decision and tend to refer to it as creating a 'federal settlement privilege,' which implies a far more expansive ruling than the *Goodyear* panel announced." *Id.* at *10-11. In reality, "by its own language," the privilege recognized in *Goodyear* "protects only 'communications made in

18

*furtherance* of settlement.'"  *Id.* at *11 (quoting *Goodyear*, 332 F.3d at 983) (emphasis added in *Westlake Vinyls*).  In *Westlake Vinyls*, this Court "clarif[ied] that it does not interpret *Goodyear*, or any other binding law as creating a 'settlement privilege' broader in scope than one which shields from discovery communications made, or documents created, for the specific purpose of furthering settlement negotiations."  *Id.* at *13; *see also Winchester v. City of Hopkinsville*, 2014 U.S. Dist. LEXIS 170592, *5 (W.D. Ky. 2014) (stating that *Goodyear* does not recognize a broad 'settlement privilege,' but rather, "by its own language, it protects only communications made in furtherance of settlement") (quotation omitted).  District courts in other circuits have also questioned – and limited – the reach of the privilege recognized in *Goodyear*.  *See, e.g.*, *Charles E. Hill & Assocs. V. ABT Elecs., Inc.*, 854 F. Supp. 2d 427, (E.D. Tex. 2012) (applying exception to "*Goodyear* rule" and requiring production of draft license agreements and underlying settlement negotiations in patent litigation, reasoning that pre-settlement communications would be a "valid consideration" in determining whether the settlement agreements accurately reflect the value of the patents at issue).  In this case, the Settlement Conference Report and Order does not contain any statements made in furtherance of settlement negotiations.  Therefore, the privilege does not apply.

Moreover, the language of Rule 408 demonstrates that the concerns implicated in the privilege recognized in *Goodyear* are not present here.  The Settlement Conference Report and Order is not being offered for admission in evidence "on behalf of any party [] to prove or disprove the validity or amount of a disputed claim" or for purposes of impeachment.  *See* Fed. R. Evid. 408(a).  Nor is either of the situations contemplated by Rule 408(a)(1) or (2) present here.  The Court further notes that Rule 408 itself contemplates certain exceptions to the general

prohibition on admission of settlement communications.  *See* Fed. R. Evid. 408(b) ("The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.").

No party to this case has sought admission at trial or another proceeding of any evidence of confidential settlement communications.  At issue is the Settlement Conference Report and Order, in which *the Court*, not any party, deemed it necessary to recount certain events that occurred during the Settlement Conference.  As is addressed above in detail, there is no compelling reason to shield from the public view the contents of the Settlement Conference Report and Order.  Neither the Sixth Circuit's reasoning in *Goodyear* nor Rule 408 alters that conclusion.

Defendants quote a decision of the Second Circuit, *United States v. Glens Falls Newspapers, Inc.*, 160 F.3d 853, 858 (2d Cir. 1998), for the proposition that "[f]ew cases would ever be settled if the press or public were in attendance at a settlement conference or privy to settlement proposals."  (DN 40-1 at 2; *see also id.* ("A settlement conference is an opportunity for the parties, with the court acting as an impartial mediator, to have a frank discussion about the value of avoiding a trial.") (quoting *Glens Falls Newspapers*, 160 F.3d at 858).)  The Court agrees with the sentiments expressed by the Second Circuit in *Glens Falls Newspapers*. However, that decision is not binding on this Court, and in any event, the analysis in *Glens Falls Newspapers* has no bearing on this matter.  The contents of the Settlement Conference Report and Order are unrelated to any legitimate evaluation of the strengths and weaknesses – or value – of either party's case.  *See id.* at 858 (stating that a settlement conference provides an

20

"opportunity for the parties . . . to have a frank discussion about the value of avoiding a trial" and noting that parties are "often called upon to evaluate both the strengths and weaknesses of their respective cases").  The *Glens Falls Newspapers* court expressed a strong desire to settle what it described as a "complex, expensive, ten-year-old case of great public importance."  Here, those concerns are not present.  This is not a situation in which a third party, such as a media outlet, seeks publication of confidential documents, and there are no great public interests that might outweigh the "strong presumption" of public right of access to court proceedings.

Defendants also cite a decision of the Southern District of California, which Defendants describe as "a district court order[] seal[ing] a magistrate judge's order quoting the substance of a party's confidential settlement statement."  (DN 40-1 at 3 (quoting *Fidelity National Financial, Inc. v. National Union Fire Insurance Co.*, 2014 WL 1393743, *12 (S.D. Cal. 2014).)  Defendants state that the Settlement Conference Report and Order is "even more concerning" than the situation in *Fidelity National* because it "reveals information so sensitive that UPS SCS declined to include it even in its confidential settlement statement."  (DN 40-1 at 3.)

The *Fidelity National* case is entirely different from this case with respect to underlying facts and procedure.  The statement at issue in *Fidelity National* was created internally during the course of settlement negotiations in *another matter* and contained a detailed analysis of potential liability.  *Fidelity National Financial, Inc.*, 2014 WL at *2-3.  The statement came to another party's attention when it was cited in an expert report.  *Id.*  *Fidelity National* did not involve a statement provided to the court in anticipation of a settlement conference, as suggested by Defendants, or a court order, like the Settlement Conference Report and Order.  The statement in *Fidelity National* also implicated issues of attorney-client privilege under California law,

whereas in this case, the Settlement Conference Report and Order to which Defendants object relates solely to discussions between the Court and counsel that revealed to the Court counsel's violation of a Court Order. *See id.* at *5-6.

Additionally, the Court notes that while the *Fidelity National* court did seal the magistrate judge's order at issue, it did so "in an abundance of caution," and only after concluding that the party's statement quoted by the magistrate judge was of "highly questionable" relevance pursuant to Federal Rule of Evidence 403 and that there were numerous fact witnesses available to testify and provide the "best evidence of the issues in th[e] case." *Fidelity National Financial, Inc.*, 2014 WL at *11-12.  By contrast, in this case, without question, the Court was in the best position to evaluate and report on the statements of counsel and Reza during the March 23, 2015 Settlement Conference.  Finally, even if there were more factual and legal similarities between *Fidelity National* and this case, the Southern District of California's decision is not binding on this Court.

The final case that Defendants bring to the Court's attention is *Doe v. State of Nebraska*, 971 F. Supp. 1305 (D. Neb. 1997).  Defendants cite *Doe* as holding that while a party's settlement authority could be disclosed to the magistrate judge for purposes of determining sanctions, documents containing such information would be kept under seal and not made available to the trial judge.  (DN 40-1 at 3-4 (citing *id.*).)  In *Doe*, the defendants sought "clarification on whether disclosure of the limits of authority possessed by a party's representative(s) at a mediation session may be 'confidential' information protected from disclosure" in relation to the plaintiff's pending motion for sanctions against the defendants. *Doe*, 971 F. Supp. at 1307.  The court held that neither an applicable Nebraska statute regarding

22

alternative dispute resolution, nor a "Mediation Plan" imposed by the court, "preclude[d] the admission or consideration of evidence related to the parties' settlement proposals, in a proceeding concerning a motion for sanctions." *Id.* at 1308. Nonetheless, the court concluded that the "evidentiary materials, briefs, and recording of any hearings held in connection with the motion for sanctions" would be kept under seal and not be made available to the presiding trial judge. *Id.* The decision of the District of Nebraska in *Doe* is not binding on this Court, and the Nebraska statute and "Mediation Plan" that informed the *Doe* court's decision do not apply in this case. Finally, whereas the *Doe* court was concerned about parties' use of "confidential information" in later proceedings, the Court has no such concerns in this case.

As is discussed repeatedly in the instant Memorandum Opinion and Order, the events underlying the sanctions issued against Defendants and their counsel are unrelated to any confidential information which might potentially undermine Defendants' position. In issuing sanctions for conduct associated with settlement conferences, courts routinely discuss the sanctionable behavior by parties and/or their counsel. The fact that such behavior arose in connection with a settlement conference does not mean that the behavior automatically must be kept confidential. One need only look to the cases cited by the Court in the Settlement Conference Report and Order. *See, e.g.*, *Jones v. Winnepesaukee Realty*, 990 F.2d 1, 5-6 (1st Cir. 1993) (affirming monetary sanctions imposed on plaintiffs and detailing their failures to comply with a number of court orders); *Empire, Inc. v. Wal-Mart Stores, Inc.*, 188 F.R.D. 478, 481-482 (E.D. Ky. 1999) (discussing sanctionable behavior of defendant's counsel and collecting cases in which defendant was sanctioned for improper pretrial conduct); *St. Paul Fire & Marine Ins. Co. v. CEI Fla.*, 152 F.R.D. 95 (E.D. Mich. 1993) (issuing sanctions and discussing amounts

of plaintiff's demands and limits on settlement authority of defendant's representative); *Lockhart v. Patel*, 115 F.R.D. 44, 45-46 (E.D. Ky. 1987) (discussing improper conduct by defense counsel and relaying specific settlement demands and offers made by the parties).

In the event that Plaintiff seeks admission of any aspect of the Settlement Conference Report and Order in a proceeding before the District Judge in this case, Defendants are free to present arguments regarding relevance, confidentiality, or admissibility pursuant to Rule of Evidence 408 or a settlement communications privilege.  At this juncture, however, neither the Sixth Circuit's decision in *Goodyear*, nor Rule 408 of the Federal Rules of Evidence, nor any of the other decisions from other jurisdictions cited by Defendants, dissuade the Court from its conclusion that the Settlement Conference Report and Order should not be filed under seal.

Accordingly, IT IS HEREBY ORDERED that Defendants' Motion to Seal Settlement Conference Report and Order (DN 40) is DENIED.

cc:  Counsel of record