UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

BRUCE HOLLY, Plaintiff,

v. Civil Action No. 3:13-cv-980-DJH-CHL

UPS SUPPLY CHAIN SOLUTIONS, INC.,
and JEREMY FLETCHER, Defendants.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Defendants UPS Supply Chain Solutions, Inc. ("UPS SCS") and Jeremy Fletcher have objected to the Settlement Conference Report and Order entered by Magistrate Judge Colin H. Lindsay. (Docket No. 44; *see* D.N. 38) They argue that Judge Lindsay's decision to impose sanctions against them was based on erroneous findings of fact. Because the Court concludes that the decision was not clearly erroneous, the defendants' objections will be overruled.

**I.    BACKGROUND**

This litigation arises out of the defendants' termination of Plaintiff Bruce Holly's employment. During a pretrial status conference on March 10, 2015, the parties agreed to mediate the case with a magistrate judge. (D.N. 35) It was further agreed that the mediation should be scheduled for the earliest possible date in light of the defendants' outstanding summary judgment motion and the rapidly approaching trial date.[1] Because a UPS SCS representative was not available on the dates offered by the magistrate judge previously assigned to the case, Lanny King, the Court accommodated the defendants' schedule by referring the case to Judge Lindsay. (D.N. 34)

---

[1] The trial was remanded from the docket following the mediation. (D.N. 39)

1

The next day, Judge Lindsay entered an Order for Settlement Conference outlining conference requirements, including that "each party must attend through a person who is fully authorized to approve a settlement and has the power to change the party's settlement posture during the course of the conference." (D.N. 36 at PageID # 902) The Order continued: "If the party representative has a limit, or "cap" on his or her authority which would require telephone consultation with corporate offices, this requirement is not satisfied. *COMPLIANCE WITH THIS PROVISION IS CRITICAL*." (*Id.*) An addendum to the Order reiterated the requirement of a fully authorized representative, explained the reasoning behind it, and stated that any party seeking waiver of the requirement must contact the magistrate judge prior to the conference date and demonstrate "exceptional circumstances." (*Id.* at PageID # 903) The defendants did not seek a waiver. (D.N. 38 at PageID # 910)

The settlement conference was held on March 23, 2015. Several hours into the negotiations, Judge Lindsay became aware that the UPS SCS representative, Area Human Resources Manager Siria Reza, did not have settlement authority consistent with the requirements of the Order for Settlement Conference. He therefore terminated the conference.

In a Settlement Conference Report and Order issued on March 27, 2015, Judge Lindsay concluded that the defendants had deliberately disobeyed the Order for Settlement Conference by bringing a representative without the requisite settlement authority and that sanctions were therefore appropriate under Rule 16 of the Federal Rules of Civil Procedure. (*See id.* at PageID # 913-15) Holly was directed to submit documentation of his attorney's fees, costs, and expenses incurred in connection with the settlement conference, as well as any lost income resulting from his attendance at the conference. (*Id.* at PageID # 915) The defendants were ordered to either pay or object to those amounts within ten days of Holly's filing of the

documentation. (*Id.*) Holly submitted the bill of costs as directed by the Court (D.N. 42), and the defendants filed no objection to the amounts claimed.[2] They did, however, object to the Report and Order. (D.N. 44)

In support of their objections, the defendants offer an affidavit by Reza, as well as affidavits by their counsel who were present during the settlement conference, LaQuita S. Wornor and Carrie B. Pond. Wornor avers that she "attended the March 23 mediation with Ms. Reza believing that [they] were in compliance with the Court's Settlement Order." (D.N. 44-1 at PageID # 951 ¶ 6) With respect to Reza's settlement authority, Wornor asserts:

> I had been told and believed that Ms. Reza had authority to enter a settlement agreement without prior approval. Although I knew that Ms. Reza had come to the mediation with a target in mind, I believed that she had some discretion to exceed that amount based upon my prior experience handling mediations for UPS SCS.

(*Id.* at PageID # 952 ¶ 8) Wornor states that when Judge Lindsay asked her if Reza's authority was capped, she replied "that [Reza] had come with a reasonable and good faith amount or something to that effect." (*Id.* at PageID # 954 ¶ 18) When asked whether Reza could exceed that amount, Wornor recalls,

> I explained that it was my understanding that numerous individuals had been involved in valuing the case and they had come with a good faith and reasonable offer and that I believed Ms. Reza had some "wiggle room" to exceed that number. At no point did I state the amount of "wiggle room," as I did not even know what it might be. It has been my experience, however, that UPS SCS HR Managers have some discretion in offering more than the amount at which they have previously valued the case, if they so choose.

---

[2] Nor did the defendants pay the requested sum as directed. However, the deadline for such payment was later modified so that payment is now due within ten days of an order overruling the defendants' objections. (*See* D.N. 52 at PageID # 14-15)

(*Id.*) Finally, Wornor states that Reza gave her authority to make each of the defendants' counteroffers and that no calls were made to UPS SCS during the conference to obtain authority for those counteroffers. (*Id.* at PageID # 952-53 ¶¶ 8, 10, 16)

Pond likewise states that she made no calls to UPS SCS during the conference for the purpose of obtaining settlement authority. (D.N. 44-2 at PageID # 960 ¶ 19) Reza also denies making any such call. (D.N. 44-3 at PageID # 964 ¶¶ 6-7) Regarding her settlement authority and any limit on that authority, Reza states the following:

> 4. . . . . Prior to the conference, I had conversations with multiple individuals, including defense counsel, regarding Mr. Holly's claims and the settlement conference. Multiple individuals were involved in the decision as to what amount should be offered to Mr. Holly during the mediation. This decision was made after a review of several facts, including what we believed to be Mr. Holly's actual lost monetary damages. I came to the mediation with a settlement target in mind. We believed the target settlement amount actually exceeded the amount of Mr. Holly's actual damages.
>
> . . . .
>
> 6. I did not reach out to any UPS SCS employees to obtain authority to make any of the counteroffers that were made during the March 23 settlement conference. I was the sole individual who gave Ms. Wornor and Ms. Pond authority.
>
> . . . .
>
> 8. At the time the mediation concluded, I still had more than half of the target settlement amount remaining to use to negotiate a settlement.

(*Id.* at PageID # 963-64)

The affidavits of Reza, Pond, and Wornor do not reveal clear error in the Report and Order.

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 72, a magistrate judge's order on a nondispositive matter must be modified or set aside if it is "clearly erroneous or . . . contrary to

4

law," Fed. R. Civ. P. 72(a), while a recommended disposition of "a pretrial matter dispositive of a claim or defense" is subject to de novo review. Fed. R. Civ. P. 72(b). The defendants contend that the Court should review the Settlement Conference Report and Order de novo "[t]o the extent [it] is actually 'dispositive' of the issuance of sanctions." (D.N. 44 at PageID # 941) They cite *Massey v. City of Ferndale*, 7 F.3d 506, 509-10 (6th Cir. 1993), for the proposition that "motions for sanctions, fees and costs are not to be *determined* by a magistrate judge" because "'resolution of such motions is dispositive of a claim.'" (D.N. 44 at PageID # 940 (quoting *Massey*, 7 F.3d at 509-10)) The defendants acknowledge that "the sanctions issued in *Massey* were pursuant to Rule 11 after a judgment had been entered in the case"; nevertheless, they assert—without citation—that "it appears that the Sixth Circuit's holding is not limited exclusively to post-judgment Rule 11 sanction orders." (*Id.* n.4) A simple reading of *Massey* reveals that the court's statement was indeed so limited. *See* 7 F.3d at 509-10 ("Guided by Sixth Circuit precedent, we conclude that motions for sanctions, fees and costs are not to be *determined* by a magistrate judge. First, we have noted that *such post-dismissal motions* are not 'pretrial matters' pending before the court." (second emphasis added) (quoting 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a))). If this were not clear enough, the court expressly limited its holding to post-dismissal motions. *See id.* at 510 ("[W]e hold that the magistrate judge . . . did not have the authority to rule upon *post-dismissal motions* for sanctions, fees and costs." (emphasis added)). Unlike the motion for sanctions in *Massey*, the settlement conference giving rise to the Report and Order in this case was unquestionably a pretrial matter.

Moreover, there is no "claim" for sanctions here as there was in *Massey*.³ *See id.* ("[W]e have maintained that resolution of such [post-dismissal] motions [for sanctions] is 'dispositive of a claim.'" (quoting Fed. R. Civ. P. 72(b)).  Rather, the sanctions were imposed sua sponte as part of Judge Lindsay's authority under Rule 16 to conduct a pretrial settlement conference.  *See* 28 U.S.C.§ 636(b)(1)(A) (authorizing court to refer "any pretrial matter" to the magistrate judge for decision); Fed. R. Civ. P. 16(a)(5) (authorizing pretrial conference for the purpose of "facilitating settlement"); *see also* Fed. R. Civ. P. 16(c)(1) (court may require attendance of a party or party representative at conference for settlement purposes), 16(c)(2)(I) (permissible purposes of pretrial conference include "settling the case"), 16(f)(1) (court may impose sanctions if party or its attorney "is substantially unprepared to participate" in a pretrial conference, does not participate in good faith, or fails to obey a pretrial order).  Because the Report and Order dealt with a nondispositive pretrial matter, the Court will review it for clear error.  *See* Fed. R. Civ. P. 72(a).

### III.  ANALYSIS

The defendants assert that the Report and Order should be set aside because it rests on "erroneous factual findings." (D.N. 44 at PageID # 941)  They identify four supposed errors of fact:

> (1) that Ms. Reza, an Area Human Resources Manager, was not a duly authorized officer or managing agent; (2) that Ms. Reza was required to call the "home office" to enter a settlement; (3) that the Company's valuation of the case for a certain dollar amount constituted "bad faith"; and[] (4) that Ms. Reza's ability to exceed the amount for which the case had been valued still constituted a 'cap' in violation of the Court's Settlement Order.

---

³ The *Massey* panel relied on *Bennett v. General Caster Service of N. Gordon Co.*, 976 F.2d 995 (6th Cir. 1992), in which the court explained: "[T]he magistrate judge's purported order entered pursuant to appellees' Rule 11 motion resulted in an award of money damages.  Nothing remained but to execute the judgment; therefore, this purported order was dispositive of the Rule 11 matter and, consequently, dispositive of a 'claim' of a party." *Id.* at 998.

(*Id.*)  The defendants' arguments reflect an apparent misunderstanding of the basis for Judge Lindsay's ruling.

### A. Reza's settlement authority was inadequate.

The defendants assert that Reza "was not a mere figurehead" and was authorized to settle the case. (*Id.* at PageID # 942)  But the Report and Order did not find that Reza had *no* settlement authority; rather, the problem was that she lacked *sufficient* settlement authority. (*See* D.N. 38 at PageID # 910 ("[I]t was clear to the Court that Reza lacked authority *commensurate with the mandates of the Settlement Conference Order*." (emphasis added)))  And Reza's affidavit supports Judge Lindsay's conclusion that her settlement authority was limited by UPS SCS's valuation of the case.  The affidavit states that Reza "came to the mediation with a settlement target in mind" (D.N. 44-3 at PageID # 963 ¶ 4) and notes that "[a]t the time the mediation concluded, [she] still had more than half of the target settlement amount remaining to use to negotiate a settlement." (*Id.* at PageID # 964 ¶ 8)  The latter statement strongly suggests that Reza's authority was limited to the "target settlement amount," and nothing in her affidavit indicates otherwise.

Moreover, although Reza declares that she "did not reach out to any UPS SCS employees to obtain authority to make any of the counteroffers that were made during the March 23 settlement conference" and that she "was the sole individual who gave [defense counsel] authority" for those offers (*id.* ¶ 6), she does not state that she could have exceeded the target amount without contacting another UPS SCS employee.  The affidavit makes no mention of any discretion on Reza's part, even the purported "wiggle room" asserted by Wornor.  In short, nothing in Reza's affidavit indicates that she could have authorized a settlement for greater than

the "target" amount. If anything, the affidavit confirms that her authority did not exceed that amount.

> B. **The Report and Order did not rest on the conclusion that Reza or defense counsel communicated with UPS SCS corporate offices during the conference.**

With respect to the second alleged error, the defendants similarly misrepresent Judge Lindsay's order, asserting that his "finding of bad faith is largely based upon his belief that Ms. Reza was obtaining authority from someone in UPS SCS' corporate offices throughout the conference." (D.N. 44 at PageID # 943) The Report and Order makes clear that this was a secondary factor that appeared to reinforce the conclusion that Reza lacked adequate authority. For example, Judge Lindsay found that

> Defendants plainly disobeyed the Settlement Conference Order by sending Reza, an individual whose authority to agree to a settlement was capped at an amount certain . . . , to participate in the conference. Moreover, throughout the course of the settlement conference, counsel for Defendants communicated telephonically with at least one other individual at UPS SCS.

(D.N. 38 at PageID # 913; *see also, e.g.*, *id.* at PageID # 910 ("[I]t was clear to the Court that Reza lacked authority commensurate with the mandates of the Settlement Conference Order. It was also evident to the Court that Defendants' counsel, if not Reza personally, were in telephonic communication with UPS SCS corporate offices during the settlement conference."))

Reza's affidavit does show—and the Wornor and Pond affidavits confirm—that neither Reza nor defense counsel made or received telephone calls during the conference for the purpose of obtaining authority to make settlement offers. (*See* D.N. 44-3 at PageID # 964 ¶¶ 6-7; *see also* D.N. 44-1 at PageID # 952-53 ¶¶ 8, 12, 16; D.N. 44-2 at PageID # 960 ¶¶ 18-19) But the nature of the phone calls does not affect the basis of Judge Lindsay's conclusion that the defendants disobeyed the Order for Settlement Conference: Reza's authority to settle the case

was limited by UPS SCS's estimate of its worth. And as noted above, the defendants have not shown that Reza was authorized to approve a settlement beyond the predetermined "target amount" without calling someone with greater authority.

### C. The defendants improperly linked their representative's settlement authority to their valuation of the case.

The defendants' third point—that Judge Lindsay found UPS SCS's "valuation of the case for a certain dollar amount" to "constitute[] 'bad faith'"—is even more misguided. Nowhere in the Report and Order is there a finding that the defendants acted in bad faith by assigning a value to the case. Their error was in limiting their representative's settlement authority to that amount.

The defendants insist that Judge Lindsay erred in finding that Reza lacked unlimited authority because "[h]ad [they] valued [Holly's] case to be worth, for example, a trillion dollars, Ms. Reza could have authorized such a settlement." (D.N. 44 at PageID # 945) This argument misses the point. The problem is not that Reza's position at UPS SCS only comes with a certain dollar amount of settlement authority, but rather that a settlement cap tied to the defendants' valuation of the case restricted their ability to change settlement position based on information gleaned during the mediation.

The Court recognizes that a corporate representative may not have infinite settlement authority. And the Court cannot coerce parties into settling. *G. Heileman Brewing Co. v. Joseph Oat Corp.*, 871 F.2d 648, 653 (7th Cir. 1989) (citing *Kothe v. Smith*, 771 F.2d 667, 669 (2d Cir. 1985)). However,

> "[i]t is always possible that exposure of the decisionmakers to the realities of a case will bring about a reevaluation of settlement posture on the part of those persons. Thus it is appropriate for a judicial officer to require that . . . the decisionmakers be made aware of all aspects of the case and the anticipated costs of its prosecution and defense by being personally present before the court."

9

*Empire, Inc. v. Wal-Mart Stores, Inc.*, 188 F.R.D. 478, 481 (E.D. Ky. 1999) (quoting *G. Heileman Brewing Co. v. Joseph Oat Corp.*, 107 F.R.D. 275, 277 (W.D. Wis. 1985)).  This is why the Order for Settlement Conference requires that party representatives possess not merely the authority to approve a settlement, but also "the power to change the party's settlement posture during the course of the conference."  (D.N. 36 at PageID # 902)

Constructive settlement negotiations are not possible when the defendants' representative enters mediation fettered by the defendants' opinion of the case's worth.  Plaintiffs can be expected to value their cases more highly than do the defendants they sue.  The purpose of mediation, however, is to reach a compromise with the input of a neutral third party.  Limiting a representative's settlement authority based on the company's valuation of the case renders the mediator's opinion and insights meaningless and fails to account for the possibility that the defendants will learn something new about the case during the course of mediation. *See Empire, Inc.*, 188 F.R.D. at 481.  The Order for Settlement Conference seeks to avoid such a situation, and bringing a representative without the power to change the defendants' settlement position was a clear violation of that order.  (*See* D.N. 36 at PageID # 902)

**D.      Reza's settlement authority was capped in violation of the Order for Settlement Conference.**

The defendants' fourth assignment of error refers to "Reza's ability to exceed the amount for which the case had been valued" as though there were evidence that Reza had this discretion.  There was no such evidence before Judge Lindsay, nor is there any such evidence before the Court now.  At most, the defendants have offered Wornor's statement that she believed Reza had "wiggle room" (D.N. 44-1 at PageID # 954 ¶ 18) and Pond's statement that she consulted with a law firm partner in her office about whether Reza was "an appropriate representative."  (D.N. 44-

10

2 at PageID # 958 ¶ 11)  In the absence of confirmation by Reza that she had significant discretion to exceed the "target amount," the Court finds no clear error in Judge Lindsay's conclusion that her authority was capped in violation of the Order for Settlement Conference.

## IV.   CONCLUSION

The Order for Settlement Conference could not have been clearer: corporate representatives participating in a conference must have full settlement authority, including the power to change the party's settlement position.  Defense counsel were obligated to convey this requirement to their clients.  If the defendants knew they could not meet the requirement or had doubts whether Reza qualified, they should have contacted Judge Lindsay's chambers to inquire or sought an exception pursuant to the Order.  They did neither.  Instead, the defendants disobeyed the Order for Settlement Conference by bringing an unqualified party representative to the conference, and as a result, they were "substantially unprepared to participate" in the conference.  Fed. R. Civ. P. 16(f).  Judge Lindsay's decision to impose sanctions for this failure was not clearly erroneous.  However, because the circumstances giving rise to the Report and Order resulted in premature conclusion of the settlement conference, it remains an open question whether the case could be settled.  Accordingly, it is hereby

**ORDERED** as follows:

(1)   The defendants' objections to the Settlement Conference Report and Order (D.N. 44) are **OVERRULED**.  The defendants shall comply with the Report and Order as set forth in the Memorandum Opinion and Order entered May 19, 2015 (D.N. 52).

(2)   Within **fourteen (14) days** of the date of entry of this Memorandum Opinion and Order, the parties shall jointly contact Judge Lindsay's chambers to schedule a date to complete the mediation begun on March 23.

August 12, 2015

David J. Hale, Judge
United States District Court