UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

BRUCE HOLLY,                                                        Plaintiff,

v.                                              Civil Action No. 3:13-cv-980-DJH-CHL

UPS SUPPLY CHAIN SOLUTIONS, INC.
and JEREMY FLETCHER,                                               Defendants.

\* \* \* \* \*

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff Bruce Holly alleges that Defendants UPS Supply Chain Solutions, Inc. and

Jeremy Fletcher unlawfully terminated his employment.   The defendants have moved for

summary judgment on all of Holly's claims.   (Docket No. 25)   Because the undisputed facts

show that Holly is not entitled to protection under the statutes upon which his claims are based,

the Court will grant summary judgment in favor of the defendants.

I.      **BACKGROUND**

The parties agree on the facts of the incident underlying this lawsuit, which took place on

April 1, 2013.   That day, Holly experienced car trouble on his way to work at UPS Supply Chain

Solutions ("UPS SCS").   (D.N. 25-2, PageID # 349)   After he arrived, he asked and was granted

permission to leave work to take his vehicle to a repair shop.   (*Id.*)   As he was leaving, Holly

remembered that there was a handgun in the center console of his car.[1]   (*Id.*, PageID # 350-51)

He contacted a subordinate employee, Kenneth Moore (who was working at the time), and asked

if he could store the gun in Moore's vehicle while his own was being repaired.   (*Id.*, PageID #

351; *see id.*, PageID # 354)   Moore agreed, and in their employer's parking lot, Holly removed

the gun from his car and placed it in Moore's.   (*Id.*, PageID # 352-53)   He moved the gun back to

_____

[1] Holly is licensed to carry a concealed weapon in Kentucky.   (*See* D.N. 25-2, PageID # 347-48)

1

his own vehicle later that day, when the two vehicles were again in the UPS SCS parking lot. (*Id.*, PageID # 358)

Seven weeks later, following an internal investigation, Defendant Fletcher and another UPS SCS employee, Siria Reza, notified Holly that his employment was being terminated.  They cited two reasons for the termination: Holly's poor performance review in 2011 and the fact that Holly had asked a subordinate (Moore) for a personal favor on company time.[2]  (*Id.*, PageID # 367-69; D.N. 26-18, PageID # 807-08)  Fletcher later completed an employer's statement for the Kentucky Department of Unemployment Insurance in which he stated that the reason for Holly's termination was that Holly "asked a subordinate employee for a personal favor while on company time."  (D.N. 26-20, PageID # 814)  At a hearing on Holly's claim for unemployment benefits, Fletcher testified that Holly had "put [Moore] in the position of stealing time from the company in order to perform a personal favor for him," in violation of the company's "theft of time" policy.  (D.N. 26-21, PageID # 818)

Holly filed suit in September 2013, alleging that Fletcher and UPS SCS violated Kentucky Revised Statutes sections 527.020 and 237.106 by firing him and that his termination constituted wrongful discharge in violation of the public policy evidenced by those statutes. (D.N. 1-2, PageID # 9-17)  He voluntarily dismissed the latter two claims as to Fletcher and sought leave to amend his complaint to reflect the dismissal.  (D.N. 7, 8)  The Court allowed the amendment and denied Fletcher's motion to dismiss the remaining claim against him, finding

---

[2] Moore, who was uncomfortable having Holly's gun in his car, reported it to manager Ron Nolan while Holly was taking his vehicle to be repaired.  (D.N. 25-4, PageID # 417)  Nolan addressed the issue with Holly upon his return to work that day and considered it resolved. (D.N. 25-12, PageID # 544-45)  UPS SCS security and management later became aware of the incident through an unrelated investigation.  (D.N. 25-5, PageID # 435-36)

that Holly had stated a plausible claim for relief under section 527.020.   (D.N. 12)   Upon completion of discovery, both defendants sought summary judgment.   (D.N. 25)

## II.   STANDARD

Summary judgment is required when the moving party shows, using evidence in the record, that "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a); *see* 56(c)(1).   For purposes of summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).   However, the Court "need consider only the cited materials."   Fed. R. Civ. P. 56(c)(3); *see Shreve v. Franklin Cty., Ohio*, 743 F.3d 126, 136 (6th Cir. 2014).   If the nonmoving party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," the fact may be deemed undisputed for purposes of the motion.   Fed. R. Civ. P. 56(e)(2)-(3).   To withstand a motion for summary judgment, the nonmoving party must establish a genuine issue of material fact with respect to each element of each of his claims.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (noting that "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial").

## III.   ANALYSIS

The Court begins its analysis with a principle well established under Kentucky law: "Ordinarily an employer may discharge his at-will employee for good cause, for no cause, or for a cause that some might view as morally indefensible."   *Grzyb v. Evans*, 700 S.W.2d 399, 400 (Ky. 1985) (quoting *Firestone Textile Co. Div. v. Meadows*, 666 S.W.2d 730, 731 (Ky. 1983)). Exceptions to this rule include the statutes relied upon by Holly in his amended complaint, which

3

limit an employer's discretion in certain situations involving an employee's possession of a firearm. *See* Ky. Rev. Stat. §§ 237.106, 527.020.  In addition, Kentucky common law recognizes a cause of action for wrongful discharge when an employee's termination "is contrary to a fundamental and well-defined public policy" that is "evidenced by a constitutional or statutory provision." *Grzyb*, 700 S.W.2d at 401.

Despite basing his claims on statutes that protect an employee's right to keep a firearm in his vehicle, Holly maintains that it is irrelevant whether his actions were statutorily protected because the defendants have stated that he was not fired for having a gun.  Holly asserts:

> The Defendant relies upon the argument that the Plaintiff's transfer of his handgun from his vehicle to another vehicle on its property is not a protected activity.  However, according to the Defendant, the Plaintiff was not terminated for having the gun on property [sic] []or transferring it from his vehicle. Therefore such an argument does not preclude Holly's claims in this case.

(D.N. 26, PageID # 621)  He reiterates this position throughout his summary judgment response. For example, a heading in the response declares: "The Defendants' arguments on unprotected activity related to the Plaintiff's handgun have no bearing upon this case."  (*Id.*, PageID # 634; *see also id.*, PageID # 643-44 ("The fact that the firearm was moved from one vehicle to another does not have bearing upon the actionable nature of the KRS 527.020 and/or KRS 237.106 violations."))  A puzzling paragraph from page 16 of his response also bears quoting:

> The fatal flaw in UPS's argument is that they are trying to hand [sic] their case on the limited activity of Holly moving his handgun from his car to Moore's car, for safe and lawful storage.  However, UPS did not terminate Holly for this activity. . . . *Prior to now, UPS had repeatedly asserted that the handgun had nothing to do with its decision.  As such, a reasonable jury could easily conclude the same, particularly when viewing the evidence in a light most favorable to the Plaintiff.*

(*Id.*, PageID # 634 (emphasis added))

It is unclear to the Court how Holly plans to establish violations of sections 527.020 and 237.106 without showing either that his conduct was protected by statute or that the defendants fired him for protected conduct—both essential elements of his claims.  He appears to argue that the defendants unlawfully fired him for engaging in protected activity, but that it doesn't matter whether his actions were actually protected because the defendants do not admit to firing him for that reason.  The Court doubts that such circular logic would persuade a jury.  Regardless, it will not carry Holly's claims past summary judgment.  As explained below, each of Holly's claims requires a showing that his actions were protected by statute, and the undisputed facts show that he is not entitled to statutory protection.

### A.    Kentucky Revised Statutes § 527.020

Section 527.020 is part of the penal code but also creates a civil cause of action.  *Mitchell v. Univ. of Ky.*, 366 S.W.3d 895, 902 (Ky. 2012).  The statute provides:

> No person or organization, public or private, shall prohibit a person licensed to carry a concealed deadly weapon from possessing a firearm, ammunition, or both, or other deadly weapon in his or her vehicle in compliance with the provisions of KRS 237.110 and 237.115.  Any attempt by a person or organization, public or private, to violate the provisions of this subsection may be the subject of an action for appropriate relief or for damages in a Circuit Court or District Court of competent jurisdiction.

Ky. Rev. Stat. § 527.020(4).  Thus, the act protected by subsection (4) is possessing a weapon or ammunition in one's vehicle "in compliance with the provisions of KRS 237.110 and 237.115."[3] Under section 237.110, "[p]ossession of weapons, or ammunition, or both in a vehicle on the premises [of a business enterprise] shall not be a criminal offense *so long as the weapons*, or ammunition, or both *are not removed from the vehicle* or brandished *while the vehicle is on the premises*."  Ky. Rev. Stat. § 237.110(17) (emphasis added).  The statute further provides that the

---

[3] Section 237.115, which pertains to the carrying of concealed weapons in government buildings, is inapplicable here.

"[c]arrying of a concealed weapon, or ammunition, or both in a location specified in this subsection by a license holder shall not be a criminal act but may subject" an employee to "disciplinary measures by the employer." *Id.*

While it is undisputed that Holly possessed a gun in his vehicle on the UPS SCS premises, it is likewise undisputed that he removed the gun from the vehicle—in other words, his actions were *not* "in compliance with the provisions of KRS 237.110." Ky. Rev. Stat. § 527.020(4); *see* § 237.110(17). In fact, section 237.110 expressly contemplates that an employee may be disciplined for carrying a concealed weapon on the employer's premises.[4] *See* § 237.110(17). Because Holly's actions were not protected by section 527.020(4), the defendants cannot be held liable for violating that subsection.

Subsection (8), also cited in Holly's complaint, is likewise inapplicable. Pursuant to that subsection, a firearm is not considered concealed "if it is located in any enclosed container, compartment, or storage space installed as original equipment in a motor vehicle," such as a glove compartment or center console. Ky. Rev. Stat. § 527.020(8). An individual or organization may be civilly liable for "prohibit[ing] a person from keeping a loaded or unloaded firearm . . . in a vehicle in accordance with the provisions of [subsection (8)]." *Id.* Again, Holly's actions exceeded those protected by statute: the gun was initially in his glove compartment (and later Moore's spare tire console), but he removed it.

---

[4] Holly testified that he wrapped the gun in a towel or shirt before placing it in Moore's car. (D.N. 25-2, PageID # 353) A firearm is "concealed" for purposes of section 527.020 "when the weapon is not 'observed by persons making ordinary contact with [the possessor of the weapon] in associations such as are common in the everyday walks of life.'" *Vega v. Commonwealth*, 435 S.W.3d 621, 624 (Ky. 2013) (quoting *Avery v. Commonwealth*, 3 S.W.2d 624, 626 (Ky. 1928)). "Carrying" occurs "when the weapon is 'on the person or so connected or annexed to the person that the weapon is carried along as the person moves.'" *Id.* (quoting *Avery*, 3 S.W.2d at 626).

Holly essentially asks the Court to draw a line separating the periods when the gun was in a vehicle from the periods when it was on his employer's property but not in a vehicle. Even if such a distinction were permissible, Holly has presented no evidence suggesting that it would be appropriate in this case. Indeed, the undisputed evidence directly contradicts Holly's argument that his employer sought to prohibit him from keeping a gun in his car. Holly testified that he continued to carry a gun in his vehicle every day but was not disciplined for having a gun in his car any time between the initial incident on April 1, 2013, and the date of his termination nearly two months later. (D.N. 25-2, PageID # 357) His vehicle was not searched, nor was he even asked whether he had a gun in his car. (*Id.*, PageID # 364) He knows other UPS SCS employees who keep guns in their vehicles at work, but he has never heard of anyone being disciplined for it. (*Id.*, PageID # 348-49, 357)

The only "evidence" Holly offers is a supposed inconsistency in the defendants' justification for his firing. According to Holly, the defendants have repeatedly changed their stated reasons for terminating him, and this constitutes evidence that the reasons given were pretextual. (*See, e.g.*, D.N. 26, PageID # 635-38) As the undisputed facts show that Holly's actions were not protected by statute, the Court does not reach the issue of pretext. However, the Court notes that it finds nothing inconsistent in the defendants' position; from the beginning, they have cited the April 1 incident as the basis for Holly's termination.[5] And as decisions of

---

[5] Holly states that he was initially told that he was fired for "ask[ing] a subordinate for a personal favor" and "receiv[ing] a poor 2011 employment survey/evaluation." (D.N. 26, PageID # 631) Then, Holly asserts, Fletcher testified at Holly's unemployment hearing that the reason for his termination "was asking a subordinate employee for a personal favor while on company time" and "[t]hat UPS considered Holly's poor 2011 employment survey/evaluation" in deciding to terminate him. (*Id.*) After this litigation was under way, according to Holly, UPS SCS "again altered its reasons for [his] termination" when it stated in an interrogatory answer that Holly was fired for "(i) Misusing company time; (ii) Exhibiting poor decision making skills; (iii) Putting a subordinate in an awkward and potentially risky position; and (iv) General performance issues."

7

this Court and its sister district make clear, firing an employee for an incident involving a gun is

not per se unlawful.  *See generally Mullins v. Marathon Petroleum Co.*, No. 12-108-HRW, 2014

U.S. Dist. LEXIS 13993 (E.D. Ky. Feb. 5, 2014); *Korb v. Voith Indus. Servs., Inc.*, No. 3:12-CV-

222-H, 2012 U.S. Dist. LEXIS 168464 (W.D. Ky. Nov. 28, 2012).  In sum, Holly has failed to

establish a genuine issue of material fact with respect to his claims  under section 527.020.

### B.    Kentucky Revised Statutes § 237.106

Nor does section 237.106 apply to the facts of this case.  Under that section, an employee

who is legally entitled to possess a firearm has a right to possess a firearm in a vehicle on his

employer's property.  Ky. Rev. Stat. § 237.106(1).  The statute lists four situations in which a

firearm may be "removed from the vehicle or handled": (1) self-defense, (2) defense of another,

(3) defense of property, or (4) as authorized by the owner, lessee, or occupant of the property.

Ky. Rev. Stat. § 237.106(3).  The statute imposes civil liability on "[a]n employer that fires,

disciplines, demotes, or otherwise punishes an employee who is lawfully exercising a right

guaranteed by [§ 237.106] and who is engaging in conduct in compliance with th[e] statute."

Ky. Rev. Stat. § 237.106(4).  By its terms, section 237.106 protects an employee who keeps a

firearm in his vehicle on the employer's property or who removes or handles the firearm for one

of the reasons listed in subsection (3).  It is "only under these limited circumstances" that the

employer is subject to liability for taking disciplinary action against the employee.  *Korb*, 2012

U.S. Dist. LEXIS 168464, at *6.

As established in *Korb*, the fact that the gun was initially in Holly's vehicle does not

protect any actions Holly took thereafter.  In *Korb*, as in this case, the plaintiff had a gun in his

---

(*Id.*, PageID # 632 (citing D.N. 26-23))  Though the wording may have changed, there is no
fundamental difference among these various responses—each reflects the defendants' apparent
belief that Holly made an inappropriate request of a subordinate employee.

vehicle at his place of employment.  He invited a security officer to his car to see the "sweet deal" he'd gotten, and when asked whether the weapon was real, he "removed the handgun from its holster, ejected the clip, and revealed to the security officer that the weapon was indeed a loaded 45 caliber handgun." *Id.* at *3.  In granting the employer's motion for summary judgment, this Court noted that "had Korb merely stored the gun in his vehicle, the statute would have protected his actions." *Id.* at *6.  Because Korb handled the gun for a purpose outside those enumerated in the statute, however, he was not entitled to statutory protection. *See id.* at *8 ("[W]hile Kentucky law certainly protects Korb's right to possess the handgun in his vehicle at work, this protection does not extend to the handling of the firearm.").

Likewise, if Holly had left the gun in his vehicle, he would have been protected under section 237.106.  As soon as he removed the gun for a reason other than one of the listed exceptions, however, his statutory protection ceased.  Whether the gun was properly in his vehicle before that point is irrelevant—otherwise, as the defendants observe, an employer would be forbidden from terminating an employee for *any* gun-related activity so long as the gun was in the employee's car immediately beforehand. (*See* D.N. 28, PageID # 846-47)

Nor does it matter that Holly was not showing off his gun, as was the plaintiff in *Korb*. (*See, e.g.*, D.N. 26, PageID # 647 n.32 (arguing that *Korb* is "[c]learly distinguishable" since in that case, "the handgun was removed from the vehicle to show it off"))  The statute makes no such distinction.  It protects an employee who possesses a firearm *in a vehicle* on the employer's property, with four exceptions.  Ky. Rev. Stat. § 237.106(1), (3).  If the employee removes or handles the firearm for a reason not delineated in § 237.106(3), his employer is free to take disciplinary action. *Korb*, 2012 U.S. Dist. LEXIS 168464, at *6; *see* § 237.106(4) (prohibiting

9

disciplinary action against an employee "who is lawfully exercising a right guaranteed by this section *and who is engaging in conduct in compliance with this statute*" (emphasis added)).

Holly briefly argues that his actions fall under the "defense of property" exception because he removed the gun from his car "to ensure the gun was not stolen or used in a crime." (D.N. 26, PageID # 647; *see id.*, PageID # 645-46)   The Court has little doubt that this hypothetical threat is not the scenario the defense-of-property exception was intended to cover. *See* Ky. Rev. Stat. § 503.080(1) (in criminal context, defense-of-property justification applies only if defendant believed use of force was "*immediately necessary* to prevent" taking of property (emphasis added)); *Black's Law Dictionary* 512 (10th ed. 2014) (defining *defense* as "[m]easures taken . . . to protect against an attack").   In any event, Holly admitted at his deposition that he did not handle the gun for the purpose of defending himself, another person, or his personal property.  (D.N. 25-2, PageID # 353, 358)  These statutory exceptions are therefore inapplicable.

Holly next makes a convoluted argument that his handling of the gun somehow falls under the "authorized by employer" exception.  (D.N. 26, PageID # 647)  According to Holly, because UPS SCS manager Ron Nolan "had after-the-fact knowledge on 4/1/13 of Holly transferring the handgun from Holly's car to Moore's car and then instructed Holly to move the handgun back to his vehicle and get it off of UPS property ASAP," Nolan "was authorizing Holly to handle the handgun" within the meaning of § 237.106(3).  (*Id.*)  This is not a serious argument.  As an initial matter, there is nothing to suggest that Nolan qualifies as "the owner, lessee, or occupant of the property" for purposes of the statute.  Ky. Rev. Stat. § 237.106(3). Moreover, the fact that Nolan instructed Holly to take the gun off the premises after Holly had

already removed it from his vehicle in no way establishes that Holly was authorized to handle the gun in the first place.

Holly further suggests that UPS SCS's failure to take action against him "for the transfer of the weapon from his car to Moore's and the[n] back again at the end of the shift on 4/1/13[] could also lead a jury to find the transfer between Holly's car and Moore's car a protected and/or permitted activity."  (D.N. 26, PageID # 647)  Again, Holly misconstrues the significance of transferring the firearm between vehicles.  It is irrelevant whether that specific action was the reason—stated or otherwise—for his termination.  What matters is that removing the gun from his vehicle took him beyond the reach of the statutes whose protection he seeks.

Holly also asserts that UPS has violated sections 527.020 and 237.106 because its employee manual states that the company "prohibit[s] the possession and/or use of weapons by any employee on UPS property."  (D.N. 26-26, PageID # 833; *see* D.N. 26, PageID # 619-20, 642)  In Holly's view, this statement amounts to an "absolute prohibition of weapons on [UPS's] property" that violates the statutes.  (D.N. 26, PageID # 642)  He made no such claim in his amended complaint, however, and a plaintiff may not raise new claims or theories of recovery in response to a summary judgment motion.  *Bridgeport Music, Inc. v. WB Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007) (citing *Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005)).  Accordingly, the Court need not consider this argument.

Nevertheless, the Court observes that UPS SCS has provided ample evidence that its weapons policy does not run afoul of Kentucky law.  First, the preface to the Employee Reference Guide cited by Holly notes that the Guide "contains only general information and guidelines" and "is not intended to . . . address all of the possible applications of or exceptions to UPS policies."  (D.N. 28-1, PageID # 861)  Second, the security notice posted in the UPS

parking lot states that "possession of weapons on all UPS property is strictly prohibited *except as otherwise mandated by law*."   (D.N. 28-2, PageID # 863 (emphasis added))   Finally, as previously mentioned, Holly is not aware of any UPS SCS employees being disciplined for having guns in their vehicles.  (D.N. 25-2, PageID # 348-49, 357)  In short, the evidence does not support Holly's contention that UPS has a blanket policy of prohibiting firearms on its property. And even if the company's weapons policy did conflict with the statutes, Holly's actions still must have been covered by the statutes to be protected.  *Cf. Korb*, 2012 U.S. Dist. LEXIS 168464, at *6 (although employer's blanket prohibition on firearms "could conflict with the statutory rights guaranteed by KRS § 237.106," employer was entitled to summary judgment because employee's "actions involved more than mere possession of a handgun").

### C.    Wrongful Discharge

Holly alleges that his termination was contrary to (1) "Kentucky's public policy to support [his] right to carry a firearm on or about his person at all times within the Commonwealth of Kentucky, if the firearm is carried in conformity with the requirements of" section 237.110, and (2) "Kentucky's public policy against terminating an employee who exercises rights under" sections 527.020 and 237.106.  (D.N. 13, PageID # 108 ¶¶ 56-57)  The Kentucky Supreme Court has determined that these three statutes evidence a fundamental and well-defined public policy supporting the right to bear arms.  *See Mitchell*, 366 S.W.3d at 903. The court further noted in *Mitchell* that "the General Assembly has expressed a strong public policy in favor of exempting a person's vehicle from restrictions on the possession of deadly weapons."  *Id.* at 901.

Once the existence of a public policy has been established, a plaintiff who asserts a claim of wrongful discharge outside the civil-rights context "must show 'at a minimum [1] that he was

engaged in a statutorily protected activity, [2] that he was discharged, and [3] that there was a connection between the protected activity and the discharge.'"[6] *Follett v. Gateway Reg'l Health Sys., Inc.*, 229 S.W.3d 925, 929 (Ky. Ct. App. 2007) (quoting *Willoughby v. Gencorp, Inc.*, 809 S.W.2d 858, 861 (Ky. Ct. App. 1991)).   Throughout his response brief, Holly focuses on the reason for his discharge.   Specifically, he insists that there is a genuine issue of material fact as to whether the stated reasons for his termination were pretextual.   (*See, e.g.*, D.N. 26, PageID # 636-40)   He dismisses UPS SCS's claims of unprotected activity as irrelevant.   (*See id.*, PageID # 634)   As explained above, however, the undisputed facts show that Holly's actions are not protected by any of the statutes he invokes.   Without this essential element, his wrongful-discharge claim fails as a matter of law.   *See Celotex*, 477 U.S. at 322-23; *Follett*, 229 S.W.3d at 929.

## IV.   CONCLUSION

Holly was within his statutory rights to keep a firearm in his vehicle, and removing the gun before taking his vehicle for repairs may well have been the responsible thing to do. However, by handling the gun on his employer's premises, Holly lost the protection of the statutes.   Accordingly, it is hereby

**ORDERED** that Defendants' Motion for Summary Judgment (D.N. 25) is **GRANTED**. A separate judgment will be entered this date.

February 18, 2016

**David J. Hale, Judge**
**United States District Court**

---

[6] In *Mitchell*, these three factors were undisputed.   *See* 366 S.W.3d at 897.

13